# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MARIA DEL CARMEN GAMBOA FERGUSON, *et al.*, § § § § § *Plaintiffs,* § § v. § § LOCKHEED MARTIN CORPORATION, § § *Defendant.* § | Civil Action No. 4:20-cv-097 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Lockheed Martin Corporation's Motion to Transfer or Alternatively to Dismiss (Dkt. #43). Having considered the motion and the relevant pleadings, the Court finds that Defendant Lockheed Martin Corporation's Motion to Transfer or Alternatively to Dismiss (Dkt. #43) should be **GRANTED.**

## BACKGROUND

### I. Factual Background

This is a False Claims Act case (Dkt. #1 ¶¶ 95–100). Plaintiff Maria Del Carmen Gamboa Ferguson ("Ferguson") previously worked as an auditor at Defendant Lockheed Martin Corporation ("Lockheed") from 2005 until June 2018 (Dkt. #1 ¶ 9). During that time, she served as Director of Internal Audit, Senior Manager of the Subcontract Audit Group, and Manager of Internal Audit/Subcontract Audit (Dkt. #1 ¶ 9). In these roles, she audited subcontractors that supplied parts and labor for various aircraft to ensure that the subcontractors and Lockheed complied with standards within the Federal Acquisitions Regulation and the Truth in Negotiations

Act (Dkt. #1 ¶¶ 10–11). Ferguson claims that through her work, she learned that Lockheed had violated these laws and regulations from 2010 through 2017 and passed fraudulent costs onto the government (Dkt. #1 ¶¶ 25–28). Specifically, Ferguson claims violations of the False Claims Act occurred in connection with multiple defense procurement contracts, including the C-130J Hercules Aircraft, the F-35 Joint Strike Fighter Program, the F-22 Raptor, and the F-22 (Dkt. #1 ¶ 1).

Currently, Ferguson resides in New Jersey (Dkt. #63, Exhibit 14 ¶ 1). She previously resided in Colorado, at least during a portion of 2018 (Dkt. #43, Exhibit 11 ¶ 5). No party claims that she resided in the Eastern District of Texas at any point during this case or the events leading up to this case. Further, Ferguson did not perform any work relating to her employment with Lockheed within the Eastern District of Texas (Dkt. #43, Exhibit 11 ¶ 7).

Lockheed is a corporation incorporated in Maryland with its headquarters in Bethesda, Maryland (Dkt. #1 at ¶ 6). Although Lockheed maintains a presence across the country, the headquarters of its aeronautics business is in Fort Worth, Texas, within the territory of the Northern District of Texas (Dkt. #43, Exhibit 11 ¶¶ 3, 8).[1] The aeronautics business of Lockheed executed approximately 198 prime contracts under the four programs Ferguson has identified: the F-35, F-22, F-16, and C-130J programs (Dkt. #43, Exhibit 11 ¶ 9). The only Lockheed facility located in and doing business in the Eastern District of Texas is in Lufkin within Lockheed's

---

[1] Although a small portion of the Fort Worth extends beyond Tarrant County into Denton County, which lies within the Eastern District of Texas, Julia A. Novikoff's declaration that Lockheed's only facility located in and doing business in the Eastern District of Texas is in Lufkin demonstrates that the aeronautics business headquarters is not in the Eastern District of Texas (Dkt. #43, Exhibit 11 ¶ 8). Therefore, the aeronautics business headquarters must be located within the Northern District of Texas because the remainder of Fort Worth lies within the Northern District of Texas.

Missiles and Fire Control business (Dkt. #43, Exhibit 11 ¶ 8). Other than that Lockheed owns the Lufkin facility, Ferguson does not claim the facility bears any substantive connection to this case.

Several potential relevant witnesses reside in and at least one set of relevant records is located in the Northern District of Texas. Ferguson identified valid addresses for twenty-two named current and former Lockheed employees who may serve as potential witnesses and "are likely to have discoverable information [Ferguson] may use to support her claims" (Dkt. #69, Exhibit 2 at pp. 4–15). Eighteen of the twenty-two potential witnesses reside in the Northern District of Texas (fourteen in Tarrant County, three in Parker County, and one in Dallas County) (Dkt. #69, Exhibit 2 at pp. 5–15). Three of the potential witnesses live outside of Texas (one each in Minnesota, Florida, and Arizona) (Dkt. #69, Exhibit 2 at pp. 5–15). Only one potential witness lives in the Eastern District of Texas (Denton County) (Dkt. #69, Exhibit 2 at pp. 5–15). Additionally, Lockheed claims that relevant records of the Supplier Rate Verification department in Lockheed's aeronautics business, where Ferguson worked while employed at Lockheed, are primarily located in Fort Worth, in the Northern District of Texas (Dkt. #43, Exhibit 11 ¶¶ 4, 6, 8; Dkt. #69 at p. 7). The parties have not identified any relevant evidence located in the Eastern District of Texas.

## II.   Procedural History

Ferguson, individually and on behalf of the United States, brought suit against Lockheed for alleged violations of the False Claims Act (Dkt. #1 ¶¶ 95–100). On February 27, 2023, Lockheed filed a motion to transfer the case to the Fort Worth Division of the Northern District of Texas or alternatively to dismiss the case for lack of subject matter jurisdiction or failure to state

a claim (Dkt. #43). Ferguson timely filed her response (Dkt. #63). Lockheed timely filed its reply (Dkt. #69).

## LEGAL STANDARD

Section 1404(a) permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of Section 1404 "is to prevent the waste of time, energy and money and to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held the determination of convenience turns on eight factors, where "[n]o factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The four private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy,

4

expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The four public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*; *TikTok*, 85 F.4th at 358. The plaintiffs' choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10 ("[W]hile plaintiff[s] ha[ve] the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff[s], the plaintiff[s'] choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). However, "a district court abuses its discretion by denying transfer when not a single relevant factor favors the [plaintiffs'] chosen venue." *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318).

## ANALYSIS

As an initial matter, the Court may address the issue of whether to transfer venue without first addressing jurisdiction challenges. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("[A] court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case."); *Suter v. United States*, No. 3:18-cv-2693-B-BT, 2020 WL 874812, at *1 (N.D. Tex. Jan. 28, 2020). The Court does not address Lockheed's alternative grounds to dismiss the case for lack of subject matter or failure to state a claim because the facts of this case indicate that the Northern District of Texas provides a clearly more convenient venue for this case.

Lockheed argues that this case should be transferred to the Northern District of Texas under Section 1404(a) (Dkt. #43 at p. 22). Neither party disputes that this case could have been filed originally in the Northern District of Texas. The Court therefore moves on to the second part of the transfer inquiry: whether transfer is appropriate under the private and public interest factors. The Court finds that the factors tip towards transferring the case to the Northern District of Texas.

**I.     Private Interest Factors**

First, the Court considers the private interest factors. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315.

6

A.     The Relative Ease of Access to Sources of Proof

This factor "focuses on the location of documents and physical evidence relating to the [case]." *TikTok*, 85 F.4th at 358. The relative ease of access to sources of proof is still a relevant part of the transfer analysis despite technological advances that have made transporting large volumes of documents across the country more convenient. *Volkswagen II*, 545 F.3d at 316. "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *TikTok*, 85 F.4th at 358. "But when the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,] this factor bears less strongly on the transfer analysis." *Id.* (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)).

Ferguson claims that the some of the most important documents in this case will come from the Department of Defense and its offices in charge of the F-16, F-22, F-35, and C-130J aircraft production programs, none of which are located in the Northern District of Texas or the Eastern District of Texas (Dkt. #63 at pp. 16; *see generally* Dkt. #16, Exhibit 2). Assuming these sources of proof are equally accessible in both districts, this factor would be neutral if no other source of proof exists in either forum. *See TikTok*, 85 F.4th at 358 (quoting *Planned Parenthood*, 52 F.4th at 630). However, at least one source of proof exists in the Northern District of Texas.

Lockheed claims that relevant evidence in the form of records of the Supplier Rate Verification department in Lockheed's aeronautics business are primarily located within the Northern District of Texas (Dkt. #43, Exhibit 11 ¶¶ 4, 6, 8; Dkt. #69 at p. 7). At first glance, this fact suggests that this factor favors transfer. *See Lozada-Leoni v. MoneyGram Int'l, Inc.*, No. 5:19-CV-11-RWS-CMC, 2019 WL 7875058, at *16 (E.D. Tex. Nov. 25, 2019) (quoting *In re Radmax,*

7

*Ltd.*, 720 F.3d 285, 288(5th Cir. 2013) ("The Fifth Circuit found the relative ease of access to sources of proof weighed in favor of transfer because all of the documents and physical evidence [were] located in the [transferee district]."), *report and recommendation adopted*, No. 5:19-CV-00011-RWS-CMC, 2020 WL 428080 (E.D. Tex. Jan. 28, 2020). However, Ferguson asserts any such documents from the Northern District of Texas would be produced electronically, therefore "the Court should not weigh this factor in the convenience analysis" (Dkt. #63 at p. 15). *See TikTok*, 85 F.4th at 358 (quoting *Planned Parenthood, Inc.*, 52 F.4th at 630). So, under the current precedent of *Planned Parenthood* and *TikTok*, the Court finds that this factor weighs just slightly in favor of transfer because some documents themselves are located in the Northern District but are equally accessible in either forum.

### B. The Availability of Compulsory Process

The second private interest factor considers the availability of compulsory process to secure the attendance of witnesses. *TikTok*, 85 F.4th at 360 (citing *Volkswagen II*, 545 F.3d at 315). This factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *TikTok*, 85 F.4th at 360 (quoting *Planned Parenthood*, 52 F.4th at 630–31). In the pending case, both parties agree that this factor is neutral (Dkt. #43 at p. 17; Dkt. #63 at p. 17). Compulsory process is available nationwide under the False Claims Act. *See* 31 U.S.C. § 3731(a). The Court finds that this factor is neutral.

### C. Cost of Attendance for Willing Witnesses

"The third private factor, which considers the conveniences for witnesses who attend willingly, has been described as the most important factor." *Seagen Inc. v. Daiichi Sankyo Co.*, Ltd., 546 F. Supp. 3d 515, 531 (E.D. Tex. 2021) (citations omitted). In considering the availability and

8

convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). The Fifth Circuit uses a "100-mile thresh-old" to assess this factor. *TikTok*, 85 F.4th at 361 (citing *Volkswagen II*, 545 F.3d at 315). "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id.* While the Court can consider imposed costs on witnesses when the proposed transfer is within 100 miles, "this factor has greater significance when the distance is greater than 100 miles." *Radmax*, 720 F.3d at 289.

The Fort Worth and Sherman courthouses sit less than 100 miles apart from each other, so this factor, while relevant, receives less significance. *See id.* Ferguson, as a key witness herself, lives in New Jersey (Dkt. #63, Exhibit 14 ¶ 1). She claims that she would not be inconvenienced by having to travel to Sherman (Dkt. #63 at p. 19). Lockheed names twenty-two witnesses who Ferguson provided addresses for and listed as current and former Lockheed employees that may serve as witnesses (Dkt. #69, Exhibit 2 at pp. 4–15).[2] The overwhelming majority (eighteen out of twenty-two) of the witnesses that Lockheed names live in Parker, Tarrant, and Dallas Counties (Dkt. #69, Exhibit 2 at pp. 5–15). These eighteen witnesses live closer to the Fort Worth courthouse than to the Sherman courthouse (Dkt. #69, Exhibit 2 at pp. 5–15).

The Court finds this factor to slightly favor transfer. Normally, the convenience of party witnesses receives lesser weight than the convenience of non-party witnesses. *Scrum Alliance, Inc.*

---

[2] Ferguson's initial disclosures to Lockheed also lists these witnesses' likely testimony (Dkt. #69, Exhibit 2 at pp. 5–15). *McGinnis v. Eli Lilly & Co.*, 181 F. Supp. 2d 684, 688 (S.D. Tex. 2002) ("At an absolute minimum, [the moving party] must identify key witnesses and provide a brief summary of their likely testimony . . . .").

9

*v. Scrum, Inc.*, 4:20-CV-227, 2021 WL 1845154, at *6–7 (E.D. Tex. May 7, 2021). However, the parties have only identified party witnesses for the purposes of analyzing this factor (Dkt. #43 at p. 19; Dkt. #69, Exhibit 2 at pp. 5–15).[3] Any difference in the inconvenience in traveling to the Fort Worth courthouse as opposed to the Sherman courthouse from New Jersey appears to be negligible for Ferguson (*See* Dkt. #63, Exhibit 14 ¶ 1). However, the eighteen potential witnesses living in the Northern District of Texas would experience a lesser inconvenience traveling to the Fort Worth courthouse than to the Sherman courthouse (*See* Dkt. #69, Exhibit 2 at pp. 5–15). Even the sole potential witness living in Denton County would experience a lesser inconvenience traveling to the Fort Worth courthouse than to the Sherman courthouse because the Fort Worth courthouse is closer to his residence (*See* Dkt. #69, Exhibit 2 at p. 7). Further, any difference in the inconvenience in traveling to the Fort Worth courthouse as opposed to the Sherman courthouse appears to be negligible for the remaining three out of state potential witnesses (*See* Dkt. #69, Exhibit 2 at p. 8). Accordingly, the Court finds this factor to slightly favor transfer.

### D. Other Practical Problems

The Court "considers all other practical problems that make trial of a case easy, expeditious, and inexpensive." *TikTok*, 85 F.4th at 362 (quoting *Volkswagen II*, 545 F.3d at 315). For this factor, the Court considers two issues: (1) Ferguson's choice of venue and (2) the existence of duplicative suits. Overall, the Court finds this factor weighs against transfer.

---

[3] "When deciding a motion to transfer under Section 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits and declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Garrett v. Hanson*, 429 F. Supp. 3d at 317. Because Lockheed does not specify whether the named potential witnesses are current or former Lockheed employees, the Court assumes these potential witnesses are current Lockheed employees and thus party witnesses. *See id.*

1. **Ferguson's Choice of Forum**

In a transfer of venue analysis under Section 1404(a), the plaintiffs' choice of forum does not receive the receive the same weight it enjoys under the doctrine of *forum non conveniens*. *See Volkswagen II*, 545 F.3d at 313 n.8. The plaintiffs' choice of venue "is not an independent factor" within the Section 1404(a) analysis. Further, the "[p]laintiff[s'] choice of forum is also accorded less deference when most, if not all, of the operative facts occurred elsewhere." *Alaniz v. Liberty Life Assurance Co. of Bos.*, No. 1:18-CV-297, 2018 WL 11428242, at *6 (E.D. Tex. Oct. 4, 2018) (internal citations omitted); *Volkswagen II*, 545 F.3d at 315–18; *Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 571 (N.D. Tex. 2005). No event leading to Ferguson's claims occurred in this District (*See* Dkt. #43; Dkt. #63; Dkt. #69). Only one out of the over twenty potential witnesses with valid and identified addresses lives in the Eastern District of Texas (See Dkt. #69, Exhibit 2 at p. 7). Lockheed's only facility in this District, the Lufkin facility, bears no significant connection to this case (*See* Dkt. #43, Exhibit 11 ¶ 8). No relevant factual connection exists between this case and the Eastern District of Texas. Therefore, Ferguson's choice of forum receives no weight.

2. **Existence of Duplicative Suits**

The existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. Appx. 295 (Fed. Cir. 2011). ████████████████████████████████████████████████████████████████████████████████████████ Lockheed notes that the transferee forum also has handled

11

discovery and substantive issues in two prior False Claims Act cases involving Lockheed's F-35 program (Dkt. #69 at p. 8). *See U.S. ex rel. Davis v. Lockheed Martin Corp.*, No. 4:09-cv-00645 (N.D. Tex.); *U.S. ex rel. Solomon v. Lockheed Martin Corp.*, No. 3:12-cv-04495 (N.D. Tex.). However, both Northern District of Texas cases are currently closed. *Id.* This factor considers the existence of related pending cases and their impact on the judicial economy. *See, e.g., ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769 777–78 (E.D. Tex. 2014). A closed case has little to no impact on the judicial economy because the judicial resources are already expended. Therefore, the two prior cases in the Northern District of Texas have no impact on this analysis. The existence of a similar case in this Court weighs against transfer.

Although Ferguson's choice of forum receives no weight, a similar case exists in this Court. Therefore, this factor weighs against transfer.

## II.   Public Interest Factors

Next, the Court considers the public interest factors. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315. The Court will consider each factor in turn.

### A.   The Administrative Difficulties Flowing from Court Congestion

The first public interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963). Ferguson argues that this factor weighs against transfer because the median time-to-trial as of September 2022 is about three months faster in the Eastern District of Texas than in the

Northern District of Texas (Dkt. #63 at 20–21). The median time-to-trial in the Northern District of Texas is 24.1 months and 21.0 months in the Eastern District of Texas. *Federal Court Management Statistics*, UNITED STATES COURTS, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2022.pdf.

However, Lockheed argues that even if the median time-to-trial is three months faster in this District, the Court should still transfer the case because it has no significant factual nexus to this District, will relieve congestion in this District, and will avoid unnecessary burden on the courts judicial resource (Dkt. #69 at p. 8–9). "Although the Eastern District of Texas may have a slightly shorter median time-to-trial when compared to the [Northern District of Texas], 'speed of disposition of lawsuits without any [Sherman] connection is not a valid reason for forum shopping, although filing cases without any rational relationship to the District would create congestion beyond its judicial resources.'" *Alaniz*, 2018 WL 11428242, at *7 (internal citations omitted); *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 679 (E.D. Tex. 2001). The only significant relationship between this case and this District is that the case shares similarities with another of the Court's cases. ▮▮▮▮▮▮▮▮▮▮▮ This sole connection leaves Ferguson's argument with little weight, regardless of a three-month lower median time-to-trial in this District. *See Hanby*, 141 F. Supp. 2d at 679. Therefore, this factor favors transfer.

### B.   The Local Interest in Having Localized Interests Decided at Home

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Important considerations include the location of the injury, witnesses, and the [p]laintiff[s'] residence." *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) (citations omitted). This factor recognizes that "jury duty is a burden that ought

not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

The Court should "look not to the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit." *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435). "[T]he place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (quoting *Def. Distributed*, 30 F.4th at 435). "[T]his factors weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *Id.* (quoting *Volkswagen II*, 545 F.3d at 317–18). "Also, this factor can weigh against transfer when the citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district]." *Id.* (quoting *Planned Parenthood*, 52 F.4th at 632).

Lockheed argues that this factor favors transfer because Lockheed's aeronautics business is headquartered in the Northern District of Texas, none of the relevant events occurred in this District, and Ferguson does not live in this District (Dkt. #43 at p. 20). Ferguson responds that the Eastern District of Texas has a local interest in this case because Lockheed has a facility in Lufkin (Dkt. #63 at p. 21). Further, Ferguson claims that this Districts local interest "remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community" (Dkt. #63 at p. 21) (citing *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). In support of this argument, Ferguson claims that these "several individuals" are various unspecified Lockheed employees who may live in this District (Dkt. #63 at p. 21). Therefore, Ferguson claims

14

that the Northern District of Texas does not have a stronger local interest than the Eastern District of Texas does (Dkt. #43 at p. 21–22).

Ferguson's reliance on *Hoffman-La Roche* is misplaced. *Hoffman-La Roche* was a patent infringement case dealing with an HIV inhibitor drug. 587 F.3d 1333. The transferee district retained a strong local interest in the case because the defendant developed the accused drug there and various sources of proof were available there, *Id.* at 1336. Additionally, the transferee district retained a strong local interest because various individuals who worked on developing the drug continued to reside in or near that district, calling into question their work and reputation. *Id.* The case does not stand for the proposition that the possibility that employees of a defendant may live within a district and may have worked on matters related to the case there is sufficient to provide the district with a strong local interest in the case. *See id.* at 1336–37.

Without more concrete information, the potential of various Lockheed employees living in the Eastern District of Texas is insufficient to provide this District with a strong local interest in this case. Only one current or former employee of Lockheed has been identified to live in this District (*See* Dkt. #69, Exhibit 2 at p. 7) (emphasis added). Without concrete information, such as events giving rise to the case occurring in or important sources of proof located in the Eastern District of Texas, the conclusory claim that various Lockheed employees highly involved in the events giving rise to this case may live this District is insufficient to create a strong local interest. *See Hoffman-La Roche*, 587 F.3d at 1336–37.

This District only has a weak local interest in this case. Lockheed's Lufkin facility has no impact on this factor because it has no connection to this case. The Lufkin facility is in Lockheed's Missiles and Fire Control business (Dkt. #43, Exhibit 11 ¶ 8). The parties do not claim that the

15

Lufkin facility has any connection to this case, other that Lockheed owns it. Therefore, the Lufkin facility does not impact the Eastern District of Texas's local interest in this case. *See Moss v. Lockheed Martin Corp.*, No. 3:10-CV-1659-M, 2011 WLL 197624, at *6 (N.D. Tex Jan. 18, 2011). The only fact suggesting this District has any local interest in this case is that one potential witness lives in Denton County.

Unlike the Eastern District of Texas, the Northern District of Texas has a strong local interest in this case due to the presence of at least eighteen former or current employees of Lockheed who likely involved in (or have knowledge of) the events giving rise to this case (Dkt. #63, Exhibit 2 at pp. 5–15). The residency of multiple persons involved in the events giving rise to the case supports a district having a local interest in a case. *Brooks Instrument, LLC v. MKS Instruments, Inc.*, No. 6:10–CV–221, 2011 WL 13196226, at *5 (E.D. Tex. Feb. 14, 2011).

The presence of the headquarters of Lockheed's aeronautics business in the Northern District further indicates that the Northern District has a strong local interest in this case. Ferguson admits that Lockheed manufactures the F-35 in Fort Worth (Dkt. #63 at p. 14). A district has a local interest when a party possesses a facility in the district that manufactures the product at issue in the case. *Brooks Instrument*, 2011 WL 13196226, at *5.

The Northern District of Texas has a strong interest in this case while the Eastern District of Texas has a relatively weak interest in this case. Therefore, this factor favors transfer.

C.   **Familiarity of the Forum with Governing Law**

This factor "considers the current district's familiarity with the law that will govern the case." *TikTok*, 85 F.4th at 365 (quoting *Volkswagen II*, 545 F.3d at 315). "This factor does not weigh in favor of transfer when both districts are equally capable of applying the relevant law." *TikTok*,

85 F.4th at 365 (quoting *Radmax*, 720 F.3d at 289). The parties dispute whether the Court or the Northern District of Texas has a greater familiarity with the governing law, particularly the application of the False Claims Act to the facts of this case and issues associated with Department of Defense requirements during discovery (Dkt. #43 at pp. 20–21; Dkt. #63 at p. 22; Dkt. #69 at p. 10). However, the Court finds that the Court and courts in the Northern District of Texas are equally capable of applying the relevant law. Therefore, this factor is neutral. *TikTok*, 85 F.4th at 365.

### D. Avoidance of Conflict of Laws

The final public interest factor "seeks to avoid unnecessary problems of conflict of laws or in the application of foreign law." *Def. Distributed*, 30 F.4th at 436 (quoting *Volkswagen II*, 545 F.3d at 315). Both parties agree that this factor is neutral (Dkt. #43 at p. 19 n.12; Dkt. #63 at p. 22). The Court finds this factor is neutral.

## III. Summary

The Court finds that four factors weigh in favor of transfer (two strongly and two only slightly) and one factor weighs against transfer, while three factors are neutral. The Court will thus exercise its discretion and transfer this case to the Fort Worth Division of the United States District Court for the Northern District of Texas pursuant to Section 1404(a).

## CONCLUSION

It is therefore **ORDERED** that the Defendant Lockheed Martin Corporation's Motion to Transfer or Alternatively to Dismiss (Dkt. #43) should be **GRANTED**.

It is further **ORDERED** that this case is **TRANSFERRED** to the Fort Worth Division of the Northern District of Texas.

**IT IS SO ORDERED.**

SIGNED this 18th day of December, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE